## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS,
## EASTERN DIVISION

| | | |
|---|---|---|
| HOMELAND CENTRAL INSURANCE | ) | |
| COMPANY F/K/A HAWKEYE SECURITY | ) | |
| INSURANCE COMPANY (IA) AS | ) | No:. 08 CV 2991 |
| TRANSFEREE OF WESTERN STATES | ) | |
| INSURANCE COMPANY, BY ITS | ) | Hon. Judge Ronald A. Guzman |
| TRANSFEREE ONEBEACON INSURANCE | ) | |
| COMPANY, | ) | Magistrate Judge Brown |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TUSCHALL ENGINEERING COMPANY, | ) | |
| INC., F.H. PASCHEN, S.N. NIELSEN, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM OF F.H. PASCHEN, S.N. NIELSEN, INC. TO COMPLAINT FOR DECLARATORY JUDGMENT

Defendant **F.H. PASCHEN, S.N. NIELSEN, INC**. ("Paschen"), by its undersigned counsel, provides the following Answer to the Complaint of Plaintiff **HOMELAND CENTRAL INSURANCE COMPANY F/K/A HAWKEYE SECURITY INSURANCE COMPANY (IA) AS TRANSFEREE OF WESTERN STATES INSURANCE COMPANY, BY ITS TRANSFEREE ONEBEACON INSURANCE COMPANY** ("OneBeacon"),

### COMPLAINT FOR DECLARATORY RELIEF

1.    Homeland Central Insurance Company f/k/a Hawkeye-Security Insurance Company (IA) as transferee of Western States Insurance Company; by its transferee OneBeacon Insurance Company ("OneBeacon") is a Pennsylvania corporation with its principal place of business in Canton, Massachusetts.

**ANSWER**:    **Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph One and therefore it neither admits nor denies same but demands strict proof thereof.**

2.     Upon information and belief, Defendant Tuschall Engineering Company, Inc. ("Tuschall") is an Illinois corporation with its principal place of business in Burr Ridge, Illinois.

**ANSWER**:     **Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Two and therefore it neither admits nor denies same but demands strict proof thereof.**

3.     Upon information and belief, Defendant F.H. Paschen, S.N. Nielsen, Inc. ("Paschen") is an Illinois corporation with its principal place of business in Des Plaines, Illinois.

**ANSWER:**     **Paschen admits it is an Illinois corporation.  The remainder of the allegations contained in Paragraph Three state legal conclusions which do not require an answer from Paschen and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.**

4.     This Court maintains jurisdiction pursuant to 28 U.S.C. § 1332.  There is diversity of citizenship between the parties and the amount in controversy, exclusive of costs and interest, exceeds Seventy-Five Thousand Dollars ($75,000.00).

**ANSWER:**     **The allegations contained in Paragraph Four state legal conclusions which do not require an answer from Paschen and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.**

5.     Venue is proper in this jurisdictional district pursuant to 28 U.S.C. § 1391.

**ANSWER:**     **The allegations contained in Paragraph Five state legal conclusions which do not require an answer from Paschen and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.**

## JURY DEMAND

6.     OneBeacon demands a jury trial of any factual issues pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**ANSWER**:    Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Six and therefore it neither admits nor denies same but demands strict proof thereof.

7.    On or about June 5, 2006, the Board of Trustees of William Rainey Harper College No. 512 and Illinois Capital Development Board, for the use and benefit of Board of Trustees of William Rainey Harper College No. 512 ("William Rainey") filed a lawsuit against Burnidge, Cassell and Associates, and F.H. Paschen, S.N. Nielsen, Inc. ("Nielsen") for water damage that William Rainey alleged it suffered as a result of the defective construction of its performing arts center and instructional conference center ("the Project"), in the Circuit Court of Cook County, Illinois, No. 06-L-05812 ("the Underlying Action").  A true and correct copy of the Complaint is attached as Exhibit A.

**ANSWER**:    Paschen admits that the Board of Trustees of William Rainey Harper College No. 512 and Illinois Capital Development Board are the plaintiffs in a certain pending action against Paschen in the Circuit Court of Cook County.  Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph Seven and therefore it neither admits nor denies same but demands strict proof thereof.

8.    The Complaint does not specify when work on the Project commenced or was complete.  Exhibit A.

**ANSWER**:    Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Eight and therefore it neither admits nor denies same but demands strict proof thereof.  In addition, Paschen states that the documents attached to the Complaint as Exhibits speak for themselves.

9.    On or about June 4, 2007, Nielsen filed a Third-Party complaint against Tuschall and another third party in the Underlying Action, claiming that Tuschall breached its subcontract and seeking indemnity for the work that Tuschall performed as a subcontractor on the Project.  In doing so, Nielsen claimed that Tuschall breached the subcontract by failing to perform the work (1) in a workmanlike manner; (2) free from defect; and (3) in conformity with the requirements of the subcontract agreement.  A true and correct copy of the Third Party Complaint is attached as Exhibit B.

**ANSWER**:    Paschen admits that or about June 4, 2007, it filed a Third-Party complaint against Tuschall and another third party in the Underlying Action.    The remaining allegations contained in Paragraph Nine state legal conclusions which do not require an answer from Paschen and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.    In addition, Paschen states that the documents attached to the Complaint as Exhibits speak for themselves.

10.    The Third Party Complaint does not specific when Tuschall began or completed its work on the Project.  Exhibit B.

**ANSWER**:    Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Ten and therefore it neither admits nor denies same but demands strict proof thereof.    In addition, Paschen states that the documents attached to the Complaint as Exhibits speak for themselves.

11.    Tuschall has requested a defense and indemnification from OneBeacon for the damages alleged in the Third Party Complaint.  OneBeacon has been providing a defense to Tuschall under a reservation of rights.

**ANSWER**:    Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Eleven and therefore it neither admits nor denies same but demands strict proof thereof.

**THE COVERAGE**

12.    Western States Insurance Company issued to Tuschall a commercial general liability policy under policy number WAL2054489, in effect from January 21, 2001 to January 23, 2002 ("the Policy").  A true and correct copy of the Policy is attached to Exhibit C.

**ANSWER:**    Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Twelve, and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.  In addition,

Paschen states that the documents attached to the Complaint as Exhibits speak for themselves.

13.     The insuring agreement for the Policy provides:

1.     Insuring Agreement.

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.  But:

b.     This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage' is caused by an "occurrence" that takes place in the "coverage territory;" and

(2)     The "bodily injury" or "property damage" occurs during the policy period.

**ANSWER:     Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Thirteen, and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.   Further answering, Paschen states that the portion of Exhibit C reproduced above speaks for itself.**

14.     The term "occurrence" is defined in the policy as follows:

9.     "Occurrence" means any accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**ANSWER:     Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Fourteen, and, therefore,**

**Paschen neither admits nor denies same but demands strict proof thereof.  Further answering, Paschen states that the portion of Exhibit C reproduced above speaks for itself.**

15.     The phrase "property damage" is also defined in the policy:

12.     "Property damage" means:

a.     Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.     Loss of use of tangible property that is not physically injured.  All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

**ANSWER:     Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Fifteen, and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.  Further answering, Paschen states that the portion of Exhibit C reproduced above speaks for itself.**

16.     No property damage was sustained while the Policy was in effect.

**ANSWER:     The allegations contained in Paragraph Sixteen state legal conclusions which do not require an answer from Paschen and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.  To the extent that the allegations contained in Paragraph Sixteen pleads facts, Paschen denies same and demands strict proof thereof.**

17.     The policy incorporates the following exclusion:

This insurance does not apply to:

b.     Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

(1)     That the insured would have in the absence of the contract or agreement; or

(2)    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damages", provided:

(a)    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract" and

(b)    Such attorney fees and litigation expenses are for defense of the party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**ANSWER:    Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Seventeen, and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.    Further answering, Paschen states that the portion of Exhibit C reproduced above speaks for itself.**

18.    The policy defines an "insured contract" in relevant part as follows:

9.    "Insured contract" means:

f.    The part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume that the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

**ANSWER:    Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Eighteen, and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.    Further answering, Paschen states that the portion of Exhibit C reproduced above speaks for itself.**

19.    There is no coverage under the Policy to the extent that Tuschall's agreement with Nielsen does not qualify as an "insured contract."

**ANSWER:    The allegations contained in Paragraph Nineteen state legal conclusions which do not require an answer from Paschen and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.  To the extent that the allegations contained in Paragraph Nineteen pleads facts, Paschen denies same and demands strict proof thereof.**

20.    The policy incorporates the following exclusion:

This insurance does not apply to:

      j.    Damage to Property

"Property Damage" to:

      (5)    that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

      (6)    That particular part of any property that must be restores, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**ANSWER:    Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Twenty, and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.  Further answering, Paschen states that the portion of Exhibit C reproduced above speaks for itself.**

21.    There is no coverage under the policy to the extent that any damages awarded in the Underlying Action represent any property damage to real property at William Rainey that arose out of Tuschall's operations.

**ANSWER:    The allegations contained in Paragraph Twenty-One state legal conclusions which do not require an answer from Paschen and, therefore, Paschen neither admits nor**

**denies same but demands strict proof thereof.  To the extent that the allegations contained in Paragraph Twenty-One pleads facts, Paschen denies same and demands strict proof thereof.**

22.    The term "your work" is defined in the policy as follows:

19.    "Your work" means:

a.    Work or operations performed by your or on your behalf; and

b.    Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b.    The providing of or failure to provide warnings or instructions.

**<u>ANSWER</u>:    Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Twenty-Two, and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.    Further answering, Paschen states that the portion of Exhibit C reproduced above speaks for itself.**

23.    There is no coverage under the policy to the extent that any damages awarded in the Underlying Action represent repairs to Tuschall's own work at William Rainey that has not been completed or put to its intended purposes.

**<u>ANSWER</u>:    The allegations contained in Paragraph Twenty-Three state legal conclusions which do not require an answer from Paschen and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.  To the extent that the allegations contained in Paragraph Twenty-Three pleads facts, Paschen denies same and demands strict proof thereof.**

24.    The policy incorporates the following exclusion:

      k.      Damage to Your Product

             "Property damage" to "your product" arising out of it or any part of it.

**ANSWER:**    **Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Twenty-Four, and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.   Further answering, Paschen states that the portion of Exhibit C reproduced above speaks for itself.**

     25.     The Policy defines the term "your product";

       20.     "Your product" means:

          a.     Any good or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

              (1)     You;

              (2)     Others trading under your name; or

              (3)     A person or organization whose business or assets you have acquired; and

         b.     containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

       "Your product" includes:

         a.     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

         b.     Materials, parts or equipment furnished in connection with such work or operations.

**ANSWER:**    **Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Twenty-Five, and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.   Further answering, Paschen states that the portion of Exhibit C reproduced above speaks for itself.**

26.     There is no coverage under the OneBeacon policy to the extent that Tuschall is required to undertake, or to pay for, repairs to its own product, the curtain wall.

**ANSWER:     The allegations contained in Paragraph Twenty-Six state legal conclusions which do not require an answer from Paschen and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.  To the extent that the allegations contained in Paragraph Twenty-Six pleads facts, Paschen denies same and demands strict proof thereof.**

27.     The policy incorporates the following exclusion:

1.     Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**ANSWER:     Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Twenty-Seven, and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.  Further answering, Paschen states that the portion of Exhibit C reproduced above speaks for itself.**

28.     The term "products-completed operations hazard" is defined in the policy as follows:

16.     "Products-completed operations hazard";

a.     includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)     Products that are still in your physical possession; or

(2)     Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

<ol type="a">
<li>

<ol type="a">
<li>When all of the work called for in your contract has been completed.</li>
<li>When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.</li>
<li>When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.</li>
</ol>

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.
</li>

<li>Does not include "bodily injury" or "property damage" arising out of:

<ol>
<li>The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured.</li>
<li>The existence of tools, uninstalled equipment or abandoned or unused materials or</li>
<li>Products or operations for which the classification listed in the Declarations or in a policy schedule states that products-completed, operations are subject to the General Aggregate Limit.</li>
</ol>
</li>
</ol>

**<u>ANSWER</u>:    Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Twenty-Eight, and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.   Further answering, Paschen states that the portion of Exhibit C reproduced above speaks for itself.**

29.    There is no coverage under the OneBeacon policy to the extent that the damages sought in the Underlying Action arose out of Tuschall's work on the curtain wall and part of Tuschall's completed operations.

**ANSWER:**    The allegations contained in Paragraph Twenty-Nine state legal conclusions which do not require an answer from Paschen and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.  To the extent that the allegations contained in Paragraph Twenty-Nine pleads facts, Paschen denies same and demands strict proof thereof.

30.    The policy incorporates the following exclusion:

m.    Damage to Impaired Property or Property Not Physically Injured.

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**ANSWER:**    Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Thirty, and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.  Further answering, Paschen states that the portion of Exhibit C reproduced above speaks for itself.

31.    The policy defines "impaired property" as follows:

8.    "Impaired property" means tangible property other than "your product" or "your work," that cannot be used or is less useful because:

a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.    You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by:

     a.      The repair, replacement, adjustment or removal of "your product" or "your work;" or

     b.      Your fulfilling the terms of the contract or agreement.

**ANSWER:**   **Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Thirty-One, and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.   Further answering, Paschen states that the portion of Exhibit C reproduced above speaks for itself.**

32.     Coverage is barred under the Policy for the damages claimed in the Underlying Action on the basis of Exclusion m.

**ANSWER:**   **The allegations contained in Paragraph Thirty-Two state legal conclusions which do not require an answer from Paschen and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.   To the extent that the allegations contained in Paragraph Thirty-Two pleads facts, Paschen denies same and demands strict proof thereof.**

33.     The policy includes the following reporting requirement;

     2.      Duties In The Event of Occurrence, Offense, Claim or Suit

     a.      You must see to it that we are notified as soon as practicable of an occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

     (1)      How, when and where the "occurrence" or offense took place;

     (2)      The names and addresses of any injured person and witnesses; and

     (3)      The nature and location of any injury or damage arising out of an "occurrence" or offense.

     b.      If a claim is made or "suit" is brought against any insured, you must

(1)     Immediately record the specifics of the claim or "suit" and the date received.

and

(2)     Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable

c.     You and any other involved insured must:

(1)     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"

(2)     Authorize us to obtain records and other information;

(3)     Cooperate with us in the investigation, settlement or defense of the claim or "suit;" and

(4)     Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**ANSWER:     Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Thirty-Three, and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.     Further answering, Paschen states that the portion of Exhibit C reproduced above speaks for itself.**

34.     There is no coverage under the Policy because Tuschall did not provide timely notice of the William Rainey matter.

**ANSWER:     The allegations contained in Paragraph Thirty-Four state legal conclusions which do not require an answer from Paschen and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.     To the extent that the allegations contained**

in Paragraph Thirty-Four pleads facts, Paschen denies same and demands strict proof thereof.

## COUNT I – DECLARATORY RELIEF
### (against all Defendants)

35.    OneBeacon restates and incorporates by reference the allegations contained in Paragraph 1-33 of this Complaint.

**ANSWER:    Paschen repeats and realleges its answers to Paragraphs One through Thirty-Three as and for its answers to Paragraph Thirty-Five of Count I as if fully set forth herein.**

36.    There is justiciable controversy between OneBeacon, Tuschall and Nielsen as to whether the Policy issued to Tuschall provides coverage for the damages sought in the Underlying Action.

**ANSWER:    The allegations contained in Paragraph Thirty-Six state legal conclusions which do not require an answer from Paschen.  To the extent that the allegations contained in Paragraph Thirty-Six pleads facts, Paschen denies same and demands strict proof thereof.**

37.    OneBeacon is entitled to a declaration that there is no coverage under the Policy because neither the Complaint nor the Third Party Complaint concerns claims that the Plaintiff sustained property damage during the applicable Policy period.

**ANSWER:    The allegations contained in Paragraph Thirty-Seven state legal conclusions which do not require an answer from Paschen.  To the extent that the allegations contained in Paragraph Thirty-Seven pleads facts, Paschen denies same and demands strict proof thereof.**

38.    OneBeacon is entitled to a declaration that there is no coverage under the Policy for liability that Tuschall assumed in any contract with Nielsen and Exclusion b applies.

**ANSWER:    The allegations contained in Paragraph Thirty-Eight state legal conclusions which do not require an answer from Paschen.  To the extent that the allegations contained**

in Paragraph Thirty-Eight pleads facts, Paschen denies same and demands strict proof

thereof.

39.     OneBeacon is entitled to a declaration that there is no coverage under the Policy for property damage to real property on which Tuschall was performing operations at the Project or to the extent that Tuschall is required to undertake, or pay for, repairs to its own work on the Project that had not been completed or put to its intended purpose and Exclusion j applies.

**ANSWER**:     **The allegations contained in Paragraph Thirty-Nine state legal conclusions**

**which do not require an answer from Paschen.  To the extent that the allegations contained**

**in Paragraph Thirty-Nine pleads facts, Paschen denies same and demands strict proof**

**thereof.**

40.     OneBeacon is entitled to a declaration that there is no coverage under the Policy to the extent that Tuschall is required to undertake, or pay for, repairs to its own product, the curtain wall, and Exclusion k applies.

**ANSWER**:     **The allegations contained in Paragraph Forty state legal conclusions which**

**do not require an answer from Paschen.  To the extent that the allegations contained in**

**Paragraph Forty pleads facts, Paschen denies same and demands strict proof thereof.**

41.     OneBeacon is entitled to a declaration that there is no coverage under the Policy to the extent that the damages alleged in the Underlying Action arose out of Tuschall's work on the curtain wall and part of Tuschall's completed operations, and Exclusion l applies.

**ANSWER**:     **The allegations contained in Paragraph Forty-One state legal conclusions**

**which do not require an answer from Paschen.  To the extent that the allegations contained**

**in Paragraph Forty-One pleads facts, Paschen denies same and demands strict proof**

**thereof.**

42.     OneBeacon is entitled to a declaration that there is no coverage under the Policy on the basis of Exclusion m.

**ANSWER**:     **The allegations contained in Paragraph Forty-Two state legal conclusions**

**which do not require an answer from Paschen.  To the extent that the allegations contained**

in Paragraph Forty-Two pleads facts, Paschen denies same and demands strict proof

thereof.

43.     OneBeacon is entitled to a declaration that there is no coverage under the Policy because Tuschall did not provide timely notice of the William Rainey matter, as required by the Policy.

**ANSWER**:     **The allegations contained in Paragraph Forty-Three state legal conclusions**

**which do not require an answer from Paschen. To the extent that the allegations contained**

**in Paragraph Forty-Three pleads facts, Paschen denies same and demands strict proof**

**thereof.**

44.     OneBeacon is entitled to a declaration that it has no duty to defend Tuschall because there is no potential for coverage under the Policy.

**ANSWER**:     **The allegations contained in Paragraph Forty-Four state legal conclusions**

**which do not require an answer from Paschen. To the extent that the allegations contained**

**in Paragraph Forty-Four pleads facts, Paschen denies same and demands strict proof**

**thereof.**

WHEREFORE, Defendant **F.H. PASCHEN, S.N. NIELSEN, INC.** respectfully requests

that this Court dismiss Plaintiff OneBeacon's Complaint is its entirety with prejudice, and award

Paschen any further legal and/or equitable relief which it may be entitled.

**AFFIRMATIVE DEFENSES TO ALL COUNTS OF**
**PLAINTIFF'S COMPLIANT**

**F.H. PASCHEN, S.N. NIELSEN, INC.** ("Paschen") provides the following Affirmative

Defenses to the Complaint of Plaintiff **HOMELAND CENTRAL INSURANCE COMPANY**

**F/K/A HAWKEYE SECURITY INSURANCE COMPANY (IA) AS TRANSFEREE OF**

**WESTERN STATES INSURANCE COMPANY, BY ITS TRANSFEREE ONEBEACON**

**INSURANCE COMPANY** ("OneBeacon"):

## FIRST AFFIRMATIVE DEFENSE:
### ESTOPPEL

1.      On June 5, 2006, Plaintiffs Board of Trustees of William Rainey Harper College No. 512 ("Harper") and Illinois Capital Development board ("CBD") (collectively "Underlying Plaintiffs") filed a complaint against Paschen and Burnidge, Cassell and Associates, Inc. ("Harper Complaint").

2.      The Harper Complaint contained only vague allegations relating to allegedly defectively constructed/designed portions of the Wojik Conference Center and the performing Arts Center Project at Harper College.    See Harper Complaint, a copy of which (without exhibits) is attached hereto as Exhibit A.

3.      The allegations contained in the Harper Complaint were so vague as to render impossible a determination of what was being claimed as defective, why it was allegedly defective and the nature and scope of any resulting claimed damage.    This further made it impossible to determine which, if any, of Paschen's subcontractors were implicated by claims made Harper and CDB in the underlying Harper litigation.

4.      After numerous requests by Paschen, on April 12, 2007, the Underlying Plaintiffs, through counsel, provided Paschen with an itemized and estimated costs of repairing and/or replacing the allegedly defectively designed/constructed work claimed in the Harper Complaint. No further information was provided by Harper or CBD as to the nature or the scope of their claimed defects or any resulting damage.    See April 12, 2007, letter attached hereto as Exhibit B.

5.      As a result of finally receiving from the Underlying Plaintiffs a scintilla of detail relating to the "defects" (approximately ten (10) months after the initial filing of the Harper Complaint), Paschen was able to preliminarily determine the identity of the subcontractors who performed the work claimed by the Underlying Plaintiffs to be defective.  Paschen then tendered

its defense to said subcontractors, including Tuschall Engineering Corporation ("Tuschall"), on May 9, 2007.  See May 9, 2007 tender, a copy of which is attached as Exhibit C.

6.     In its May 2007 letter, Paschen advised Tuschall to "notify your insurance carrier that a potential liability exists."  See Ex. C, p. 2, ¶4.

7.     On August 7, 2007, Paschen filed its First Amended Third Party Complaint, naming Tuschall as one of the third-party defendants in the Harper Litigation.

8.     Pursuant to Court order, on August 24, 2007, the Underlying Plaintiffs sent correspondence to the court containing additional information regarding the allegedly defective design/construction work originally only generally described in the Harper Complaint.  See August 24, 2007, letter attached hereto as Exhibit D.

9.     On September 12, 2007, Paschen, in response to the August 24, 2007, letter, drafted and sent another letter to Tuschall (c/o Tuschall's counsel) and to Insurance Resource Consultants to again tender Paschen's defense and again advised Tuschall to notify its insurers of the Underlying Litigation, the Third-Party Complaint and Tuschall's contractual duty to indemnify Paschen.  See the September 12, 2007, letter, a copy of which is attached hereto as Exhibit E.

10.     Paschen stated in its September 12, 2007 letter that it "was named as an additional insured under certain insurance policies provided by Tuschall, including, without limitation, policies issued by Western States Insurance Co. and Acuity/Heritage"  See Ex. E, p. 1, ¶2.

11.     On January 16, 2008, Paschen received from OneBeacon a declination of coverage letter.

12.     On March 18, 2008, after receiving Court approval, Underlying Plaintiffs filed an amended complaint against Paschen, Burnidge, Cassell and Associates, Inc., St. Paul Fire and

Marine Insurance Company, Abbott and Associates and Fireman's Fund Insurance Company ("Amended Underlying Complaint").

13.     Because OneBeacon failed to defend Paschen, or respond to Paschen's tender of the Underlying Litigation or file its Complaint for Declaratory Judgment within a reasonable time, OneBeacon is precluded from raising any policy defense to coverage and its claims in Count I against Paschen is barred by the doctrine of estoppel.

**SECOND AFFIRMATIVE DEFENSE:**
**IN THE ALTERNATIVE OF ESTOPPEL – UNREASONABLE DELAY**
**<u>CAUSING PREJUDICE TO PASCHEN</u>**

1-13.     Paschen repeats and realleges Paragraphs One through Thirteen of its First Affirmative Defense as and for Paragraphs One through Thirteen of its Second Affirmative Defense as if fully set forth herein.

14.     Because OneBeacon failed to defend Paschen, respond to Paschen's tender of the Underlying Litigation or file its Complaint for Declaratory Judgment within a reasonable time, OneBeacon has caused prejudice to Paschen.

15.     Therefore, in the alternative, OneBeacon is precluded from raising any policy defense to coverage and its claims in Count I against Paschen are barred because OneBeacon failed to defend Paschen, respond to Paschen's tender of the Underlying Litigation or file its Complaint for Declaratory Judgment within a reasonable time.

**THIRD AFFIRMATIVE DEFENSE:**
**<u>LACHES</u>**

1-13.     Paschen repeats and realleges Paragraphs One through Thirteen of its First Affirmative Defense as and for Paragraphs One through Thirteen of its Third Affirmative Defense as if fully set forth herein.

14.     OneBeacon failed to defend Paschen, respond to Paschen's tender of the Underlying Litigation or file its Complaint for Declaratory Judgment within a reasonable time.

15.     As such, OneBeacon's failure to timely assert known rights has caused prejudice to Paschen.

16.     Because OneBeacon failed to defend Paschen, respond to Paschen's tender of the Underlying Litigation or file its Complaint for Declaratory Judgment within a reasonable time, Plaintiff's claims in Count I against Paschen are barred by the doctrine of laches.

### FOURTH AFFIRMATIVE DEFENSE:
### WAIVER

1-13.   Paschen repeats and realleges Paragraphs One through Thirteen of its First Affirmative Defense as and for Paragraphs One through Thirteen of its Fourth Affirmative Defense as if fully set forth herein.

14.     OneBeacon, by its conduct inconsistent with an intent to enforce known rights, voluntarily and intentionally relinquished known rights under the subject insurance policy.

15.     Because OneBeacon failed to act with an intent to enforce known rights, OneBeacon's claims contained in Count I against Paschen are barred by the doctrine of waiver.

### FIFTH AFFIRMATIVE DEFENSE:
### UNCLEAN HANDS

1-13.   Paschen repeats and realleges Paragraphs One through Thirteen of its First Affirmative Defense as and for Paragraphs One through Thirteen of its Fifth Affirmative Defense as if fully set forth herein.

14.     Because OneBeacon has acted vexatiously, unreasonably and in bad faith by failing to defend Paschen, respond to Paschen's tender of defense and indemnity for the

Underlying, or file its Complaint for Declaratory Judgment within a reasonable amount of time, its claims in Count I against Paschen are barred by the doctrine of unclean hands.

### SIXTH AFFIRMATIVE DEFENSE:
### FAILURE TO NAME NECESSARY PARTIES

1-13.    Paschen repeats and realleges Paragraphs One through Thirteen of its First Affirmative Defense as and for Paragraphs One through Thirteen of its Sixth Affirmative Defense as if fully set forth herein.

14.    As listed in Paschen's September 12, 2007, letter, at least one (1) other known insurance company (Acutiy/Heritage) may be a necessary party to this lawsuit.

15.    The aforementioned insurance company may have subrogation and/or contribution rights with respect to the insurance policy issued by OneBeacon that are at issue in this declaratory action.

16.    Because not all of the necessary parties are named in this declaratory action, OneBeacon's claims in Count I against Paschen are barred.

### COUNTERCLAIM FOR DECLARATORY JUDGMENT

Defendant/Counter-Plaintiff **F.H. PASCHEN, S.N. NIELSEN, INC**. (herein "Paschen"), by its undersigned counsel, brings for its Counterclaim for Declaratory Judgment against **HOMELAND CENTRAL INSURANCE COMPANY F/K/A HAWKEYE SECURITY INSURANCE COMPANY (IA) AS TRANSFEREE OF WESTERN STATES INSURANCE COMPANY, BY ITS TRANSFEREE ONEBEACON INSURANCE COMPANY** ("OneBeacon"). In support thereof, Paschen states as follows.

1.    F.H. Paschen, S.N. Nielsen, Inc. ("Paschen") is an Illinois corporation which claims to be an additional insured under a policy issued by OneBeacon.

2.    On information and belief, OneBeacon is a corporation organized and existing

under the laws of the State of Pennsylvania, which is authorized to conduct and transact insurance business in the state of Illinois:

3.    Tuschall Engineering Corporation ("Tuschall") is an Illinois corporation and is an insured under a policy issued by OneBeacon.

4.    Board of Trustees of William Rainey Harper College No. 512 ("Harper") and the Illinois Capital Development Board ("CDB") (collectively "Underlying Plaintiffs") are the plaintiffs in a certain pending action against Paschen, which will be more fully described later herein.

5.    Paschen contracted with CDB to construct the Wojcik Conference Center and Performing Arts Center on the Harper College Campus in Palatine, Illinois, CDB Project No. 810-032-016, BDB Contract No. 50-0735-81 ("Harper Project").

6.    Tuschall was one of Paschen's subcontractors on the Harper Project.

7.    Tuschall, without ambiguity, agreed in its subcontract with Paschen to indemnify and hold Paschen harmless from any and all claims made against Paschen arising from the work provided by Tuschall for the Harper Project.

8.    On information and belief and due to its contractual obligations to Paschen, Tuschall contracted with OneBeacon (and other such insurance companies) to issue a policy/policies to satisfy the terms of the subcontract, namely to indemnify and hold Paschen harmless from any and all claims made against Paschen arising from the work provided by Tuschall for the Harper Project.

9.    Furthermore, as part of Tuschall's duties under its subcontract with Paschen, Paschen was to enjoy "additional named insurance status" under the language of Tuschall's insurance policy/polices which further contain coverage insuring Tuschall's indemnity

obligations.

10.     Pursuant to Illinois law, Tuschall and its insurers owe both a defense and indemnity for loss to Paschen.

11.     On June 5, 2006, the Underlying Plaintiffs filed a complaint against Paschen and Burnidge, Cassell and Associates, Inc. ("Harper Complaint").  See the Harper Complaint, a copy of which (without exhibits) is attached hereto as Exhibit A.

12.     The Harper Complaint contained only vague allegations relating to allegedly defectively constructed/designed portions of the Wojik Conference Center and the performing Arts Center Project at Harper College.  See Exhibit A.

13.     The insuring agreement for the Policy provides:

> 1.     Insuring Agreement.
>
> > a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.  But:
> >
> > b.     This insurance applies to "bodily injury" and "property damage" only if:
> >
> > > (1)     The "bodily injury" or "property damage' is caused by an "occurrence" that takes place in the "coverage territory;" and
> > >
> > > (2)     The "bodily injury" or "property damage" occurs during the policy period.

14.     The phrase "property damage" is defined in the policy:

> 12.     "Property damage" means:

      a.      Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

      b.      Loss of use of tangible property that is not physically injured.  All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

15.      The term "occurrence" is defined in the policy as follows:

      9.      "Occurrence" means any accident, including continuous or repeated exposure to substantially the same general harmful conditions.

16.      The policy defines "impaired property" as follows:

      8.      "Impaired property" means tangible property other than "your product" or "your work," that cannot be used or is less useful because:

      a.      It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

      b.      You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by:

      a.      The repair, replacement, adjustment or removal of "your product" or "your work;" or

      b.      Your fulfilling the terms of the contract or agreement.

17.      The term "your work" is defined in the policy as follows:

      20.      "Your work" means:

      a.      Work or operations performed by your or on your behalf; and

      b.      Materials, parts or equipment furnished in connection with such work or operations.

      "Your work" includes:

      a.      Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      b.      The providing of or failure to provide warnings or instructions.

18.     The terms of the Tuschall/Paschen Subcontract, Paragraphs Twenty-Two and Twenty-Four, provide that Tuschall shall indemnify, defend, and hold harmless Paschen from and against any and all claims arising from the Tuschall Work performed by Tuschall pursuant to its Subcontract Agreement with Paschen, including, without limitation, any claims that the Tuschall Work was defective or not in conformity with Tuschall Subcontract Agreement or Project Documents.  See Tuschall/Paschen Subcontract contained in the Third Party Complaint against Tuschall, a copy of which is attached to OneBeacon's Complaint as Exhibit B., p. 11-12, ¶¶22 & 24.

19.     Paschen is an additional insured on the Acuity policy issued to Tuschall pursuant to an additional insured endorsement, contained in Exhibit C of OneBeacon's Complaint.

20.     After numerous requests by Paschen, Harper and CDB on April 12, 2007, through counsel, provided Paschen with an itemized and estimated costs of repairing and/or replacing the allegedly defectively designed/constructed work claimed in the Harper Complaint.  No further information was provided by the Underlying Plaintiffs as to the nature or the scope of their claimed defects or any resulting damage.  See April 12, 2007 letter attached hereto as Exhibit B.

21.     As a result of finally receiving from the Underlying Plaintiffs a scintilla of detail relating to the "defects" (approximately ten (10) months after the initial filing of the Harper Complaint), Paschen was able to preliminarily determine the identify of the subcontractors who performed the work claimed by the Underlying Plaintiffs to be defective.  Paschen then tendered its defense to said subcontractors, including Tuschall, on May 9, 2007.  See May 9, 2007 tender, a copy of which is attached as Exhibit C.

22.     In its May 9, 2007 letter, Paschen advised Tuschall to "notify your insurance carrier that a potential liability exists."  See Ex. C, p. 2, ¶4.

23.    On August 7, 2007, Paschen filed its First Amended Third Party Complaint, naming Tuschall as one of the third-party defendants in the Underlying Litigation.

24.    Pursuant to Court order, on August 24, 2007, Underlying Plaintiffs sent correspondence to the Court containing additional information regarding the allegedly defective design/construction work originally only generally described in the Underlying Complaint. See August 24, 2007 letter attached hereto as Exhibit D.

25.    On September 12, 2007, Paschen, in response to the August 24, 2007, letter, drafted and sent another letter to Tuschall (c/o Tuschall's counsel) and to Insurance Resource Consultants to again tender Paschen's defense and again advised Tuschall to notify its insurers of the Underlying Complaint, the Third-Party Complaint and Tuschall's contractual duty to indemnify Paschen. See the September 12, 2007 letter attached hereto as Exhibit E.

26.    Paschen stated in its September 12, 2007, letter that it "was named as an additional insured under certain insurance policies provided by Tuschall, including, without limitation, policies issued by Western States Insurance Co. and Acuity/Heritage" See Ex. E, p. 1, ¶2.

27.    On January 16, 2008, Paschen received from OneBeacon a declination of coverage letter.

28.    On March 18, 2008, after receiving Court approval, Underlying Plaintiffs filed an amended complaint against Paschen, Burnidge, Cassell and Associates, Inc., St. Paul Fire and Marine Insurance Company, Abbott and Associates and Fireman's Fund Insurance Company ("Amended Underlying Complaint").

**COUNT I: DECLARATORY JUDGMENT**
**DUTY TO DEFEND PASCHEN**

29.    Paschen adopts and repeats the allegations of Paragraphs One through Twenty-

Eight as and for Paragraph Twenty-Nine hereof as though the same were fully set forth herein.

30.    Paschen contends that OneBeacon has a duty and obligation to defend and indemnify Paschen in the Underlying Litigation.

31.    The above contentions of Paschen are, on information and belief, denied by OneBeacon which, in turn, contends that OneBeacon has no duty or obligation to defend or indemnify Paschen in the Underlying Litigation.

32.    Pursuant to 735 ILCS § 5/2-701 et seq, Paschen is entitled to a judicial determination concerning the scope and nature of its rights under the policies at issue herein and of those of all other parties to this action with respect to the underlying action and underlying third-party action.

**WHEREFORE**, Defendant/Counter-Plaintiff **F.H. PASCHEN, SN NIELSEN, INC**. requests this Court to enter judgment in its favor and to enter an order declaring the rights and obligation of Paschen, Tuschall, OneBeacon as follows:

      a.    that there is coverage afforded to Paschen under the policies issued by OneBeacon with respect to defense obligations, indemnity obligations, obligations to pay judgments against entered against Paschen in connection with the underlying action or the underlying third-party action.

      b.    that OneBeacon is obligated under the policies to defend, pay defense costs and/or to indemnify Paschen with respect to the underlying action or the underlying third-party action.

      c.    that OneBeacon is obligated under the OneBeacon policies to pay or indemnify Paschen for any judgment, award or settlement entered in the underlying action or underlying third-party action against Paschen.

    d.      that OneBeacon is estopped from denying coverage or asserting policy defenses.

Respectfully submitted,
**F.H. PASCHEN, S.N. NIELSEN, INC.**


By:     /s/ Christopher J. Hales
          One of the Attorneys for
          F.H. Paschen

Ellen B. Epstein #6187521
Christopher J. Hales #6280150
**BURKE BURNS & PINELLI, LTD.**
Three First National Plaza
Suite 4300
Chicago, IL  60602
(312) 541-8600

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| BOARD OF TRUSTEES OF WILLIAM | ) | |
| RAINEY HARPER COLLEGE NO. 512, | ) | |
| and ILLINOIS CAPITAL DEVELOPMENT | ) | |
| BOARD, for the use and benefit of | ) | |
| BOARD OF TRUSTEES OF WILLIAM | ) | |
| RAINEY HARPER COLLEGE NO. 512, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| BURNIDGE, CASSELL AND | ) | |
| ASSOCIATES, INC., | ) | |
| | ) | |
| Serve:     Charles H. Burnidge | ) | |
| Burnidge-Cassell Assoc. | ) | |
| 2425 Royal Blvd. | ) | |
| Elgin, IL 60123 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| F.H. PASCHEN, S.N. NIELSEN, INC., | ) | |
| | ) | |
| Serve:     Edward J. Burke | ) | |
| Burke Burns & Pinelli, Ltd. | ) | |
| 3 1st National Plaza | ) | |
| Suite 4300 | ) | |
| Chicago, IL 60602 | ) | |
| | ) | |
| Defendants. | ) | |

2006L005812
CALENDAR/ROOM Y
TIME 00:00
Breach of Contract

COMPLAINT

NOW COME Plaintiffs, Board of Trustees of William Rainey Harper College No.

512, a body politic and corporate, and the Illinois Capital Development Board, an agency

of the State of Illinois, by their attorneys, Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd.,

1

EXHIBIT
A

and for their Complaint against Defendants, state as follows:

## ALLEGATIONS COMMON TO ALL COUNTS

1.     Plaintiff, Board of Trustees of William Rainey Harper College No. 512 ("Harper College"), is a body politic and corporate under the laws of the State of Illinois.

2.     Plaintiff, the Illinois Capital Development Board (the "CDB" and together with Harper College, "Plaintiffs"), is a body politic and corporate organized under the laws of Illinois, and has the statutory authority to enter into contracts for the construction of State agency facilities, including but not limited to those for the Board of Trustees of William Rainey Harper College No. 512, and to exercise all powers necessary to accomplish the purposes thereof.

3.     Defendant Burnidge, Cassell and Associates, Inc. ("Burnidge") is an Illinois corporation engaged in the business of performing architectural design and related construction services.

4.     Defendant F.H. Paschen, S.N. Nielsen, Inc. ("Paschen" and together with Burnidge, "Defendants") is an Illinois corporation engaged in the business of general construction contracting and other construction related services.

5.     On or about February 14, 1996, Burnidge entered into an agreement with the CDB under which it was to prepare plans and specifications for the construction of the Wojcik Conference Center and Performing Arts Center on the Harper College Campus (the "Project") and to provide full time project representation for the Project on the job site (the "Design Contract").  A copy of said agreement is attached hereto and incorporated by reference as Exhibit A.

6.     At all relevant times, Harper College was identified as the user agency in the Design Contract and was intended by the parties to be a direct intended third party beneficiarry of the Design Contract.

7.     The Design Contract incorporated an alternative dispute resolution clause, which provides in part:

> Each party to any dispute over $50,000 agrees, upon the request of any other party to the dispute, to submit the matter to ADR, in a form to be determined by agreement of the parties.  The parties shall first confer informally with one another to attempt to resolve the dispute.  In the event that the assistance of an unbiased neutral is required, the parties shall meet and come to an agreement as to what form the ADR should take and who the unbiased neutral should be. Forms of ADR that may be utilized include, but are not limited to, mediation and mini-trials, but do not include formal arbitration.   (*See* Section 00715 of Appendix E to Design Contract, attached as **Exhibit A**.)

8.     On or about March 28, 2000, the CDB entered into a contract with Paschen to construct the Project in strict accordance with the plans and specifications prepared by Burnidge (the "Construction Contract").  A true and correct copy of the Construction Contract is attached hereto and incorporated by reference herein as **Exhibit B**.  Copies of the plans and specifications which are part of the contract documents are too voluminous to attach hereto and will be supplied upon a reasonable production request.

9.     At all relevant times, Harper College was identified as the user agency in the Construction Contract and was intended by the parties to be a direct intended third party beneficiary of the Construction Contract.

10.     The Construction Contract incorporated an alternative dispute resolution clause, which provides:

> Each party to any dispute of more than $50,000 agrees upon the request of any other party to the dispute, to submit the matter to ADR, in a form to be

determined by agreement of the parties. The parties shall first confer informally with one another to attempt to resolve the dispute. In the event that the assistance of an unbiased neutral is required, the parties shall meet and come to an agreement as to what form the ADR should take and who the unbiased neutral should be. Forms of ADR that may be utilized include, but [are] not limited to, mediation and mini-trials, but do not include formal arbitration. (*See* Standard Documents for Construction, attached as **Exhibit B**, which are incorporated into the Construction Contract.)

11. Prior to commencing this action, Harper College, through its attorneys, sent a letter to Burnidge and Paschen, requesting their participation in the process of alternative dispute resolution of the claims in this action, in accordance with the terms of the Design Contract and Construction Contract. (*See* **Exhibit C.**)

12. To date, neither Burnidge nor Paschen have responded to Harper College's aforesaid request for alternative dispute resolution.

13. Plaintiffs have observed various symptoms of problems that occurred in connection with the Project.

14. In response to these symptoms, Plaintiffs commenced discussions with Burnidge and Paschen, during which Plaintiffs notified Burnidge and Paschen of the above-referenced symptoms, and in response to which Burnidge and/or Paschen investigated these occurrences in an effort to identify the root causes of the symptoms and propose various solutions.

15. Burnidge and Paschen continued to attempt to identify the root causes of these occurrences and to propose solutions to Plaintiffs throughout the course of the construction of the Project and until late 2004, at which time Plaintiffs engaged the firm of Wiss, Janney, Elstner Associates, Inc. (herein after referred to as "Wiss, Janney") to

4

conduct an independent review and field investigation of the above-referenced symptoms and make specific recommendations to remedy the symptoms Plaintiffs had experienced.

16.    On or about December 13, 2004, Wiss, Janney submitted a written report to Harper College (hereinafter referred to as the "Wiss Janney Report"), detailing its observations of the symptoms previously recognized by Plaintiffs and its theories of their root causes.

17.    The Wiss Janney Report implied for the first time that the symptoms were caused by breaches of the Design and Construction Contracts committed respectively by Burnidge and Paschen, as more fully described in Counts I and II of this Complaint.

18.    Plaintiffs did not know and could not have reasonably known until late December 2004, when they received and reviewed the Wiss Janney Report, that the above-referenced symptoms were caused by Burnidge's and Paschen's respective breaches of the Design and Construction Contracts.

19.    After learning that the above-referenced symptoms were due to Burnidge's and Paschen's respective breaches of the Design and Construction Contracts, Plaintiffs commenced good-faith settlement discussions with Burnidge and Paschen, during which time Burnidge and Paschen represented to Plaintiffs on multiple occasions their willingness to work with Plaintiffs to resolve the issues arising from the symptoms exhibited in the construction of the Project, and indicated to Plaintiffs that both were willing to participate in mediation in accordance with the ADR provisions of the Design and Construction Contracts.

20.    Despite repeated attempts by Plaintiffs, Defendants subsequently failed to follow through with their promises and participate in mediation.

21.    Accordingly, Defendants are estopped from defending this action on the ground that the causes of action alleged in Counts I and II of this Complaint are barred by the statute of limitations or by any conditions precedent.

22.    Venue of this action is proper in this Court pursuant to 735 ILCS 5/2-101(2), because the Design and Construction Contracts were performed and a substantial part of the events giving rise to this action occurred in Cook County, Illinois.

<u>COUNT I</u>
**(Breach of Contract - Burnidge, Cassell and Associates, Inc.)**

23.    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 22 of their Allegations Common to All Counts as if stated fully herein.

24.    At all relevant times, Burnidge held itself out and represented that it had the requisite skill and expertise to provide architectural, structural, mechanical, and engineering services, including the preparation of architectural, structural, mechanical and civil drawings, project manuals, specifications, bid packages, and addenda, to review and approve shop drawings and submittals as well as to provide contract administration services and full-time on-site Project representation and inspection of the construction, which included, but was not limited to, verification of the constructed Project's conformance with the contract documents.

25.    Burnidge had a contractual duty to exercise the requisite care and skill of a professional to design and provide full-time observation of the construction of the Project in accordance with industry standards.

26.    Burnidge had a statutory duty to exercise the requisite care and skill of a professional architect in the performance of its obligations under the Design Contract.

6

27.    Burnidge had a contractual duty to exercise reasonable care to make revisions to the contract documents during construction of the Project to conform to industry standards, and to correct errors, ambiguities, or omissions in its drawings and specifications.

28.    Burnidge, as full-time Project representative, had a duty to observe the construction of the Project to guard and protect the interests of Harper College and the CDB and to assure Harper College and the CDB of conformance of construction with the contract plans and specifications.

29.    During design and construction of the Project, Burnidge materially breached its statutory, express, and implied duties and obligations to Harper College and the CDB in the following manners:

a.    the architectural drawings prepared by Burnidge do not indicate any specific type of material to be used for the exterior soffit near the dinning room, and no control joints were indicated on the drawings, and accordingly the aforesaid soffit is apparently constructed of painted gypsum sheathing without all necessary joints;

b.    the dining room roof was defectively designed such that there is ponding and leakage;

c.    portions of the roof membrane over the performing arts center exhibit blisters and ridges;

d.    a recessed floor slab in the auditorium near a wheelchair lift is constructed of insufficient thickness, allowing water intrusion and rusting of bolts;

7

    e.    the masonry wall is constructed without sufficient expansion joints, and as a result cracking has occurred, which has resulted in water infiltration;

    f.    the coatings on the performing arts center fly tower walls has been misapplied such that the coating does not adequately bond to the concrete surface;

    g.    the conference center curtain walls leak;

    h.    the performing arts center sidewalk is constructed without sufficient control joints; and

    i.    by causing other design defects in the Project.

30.    As a direct and proximate result of Burnidge's aforesaid material breaches of contract, Harper College and the CDB have been damaged in an amount to be determined at trial in excess of Fifty Thousand Dollars ($50,000).

31.    The CDB, and Harper College as the intended third party beneficiary of the Design Contract between the CDB and Burnidge, have fully performed all of their obligations under the Design Contract.

WHEREFORE, Plaintiffs Board of Trustees of William Rainey Harper College No. 512 and the Illinois Capital Development Board pray for entry of a judgment in their favor and against Defendant Burnidge, Cassell and Associates, Inc. in an amount in excess of Fifty Thousand Dollars ($50,000), together with attorneys' fees and costs, and for such other and further relief as this Court deems just and proper in the circumstances.

<u>COUNT II</u>
(Breach of Contract - F.H. Paschen, S.N. Nielsen, Inc.)

8

32.     Plaintiffs incorporate the allegations contained in Paragraphs 1 through 22 of their Allegations Common to All Counts as if stated fully herein.

33.     At all relevant times, Paschen held itself out and represented that it had the requisite skill and expertise to comply with the contract plans and specifications.

34.     Paschen had an express and implied contractual duty to strictly conform to the Construction Contract prepared by Burnidge.

35.     Paschen materially breached its express and implied contract obligations and duties in the following manner:

    a.    a recessed floor slab in the auditorium near a wheelchair lift is constructed of insufficient thickness, allowing water intrusion and rusting of bolts;

    b.    the exterior soffit near the dining room is constructed without sufficient control joints;

    c.    the masonry wall is constructed without sufficient expansion joints, and as a result cracking as occurred, which has resulted in water infiltration;

    d.    the roof membrane over the performing arts center exhibits blistering and ridges;

    e.    the coatings on the performing arts center fly tower walls has been misapplied such that the coating does not adequately bond to the concrete surface;

    f.    the conference center curtain walls leak;

9

g.     the performing arts center sidewalk is constructed without sufficient

control joints; and

h.     there is ponding and leakage in the dining room roof.

36.     Each of the aforesaid defects is a material breach of the Construction

Contract.

37.     Harper College and the CDB have been damaged by the aforesaid material

breaches of contract because the defective work must be replaced and/or has diminished

the value of the Project.

38.     As a direct and proximate result of Paschen's aforesaid material breaches

of contract, Harper College and the CDB have been damaged in an amount to be

determined at trial in excess of Fifty Thousand Dollars ($50,000).

39.     The CDB, and Harper College as the intended third party beneficiary of the

Construction Contract between the CDB and Paschen, have fully performed all of their

obligations under the Construction Contract.

WHEREFORE, Plaintiffs Board of Trustees of William Rainey Harper College No.

512 and the Illinois Capital Development Board pray for the entry of a judgment in their

favor and against Defendant Burnidge, Cassell and Associates, Inc. in an amount in

excess of Fifty Thousand Dollars ($50,000), together with attorneys' fees and costs, and

for such other and further relief as this Court deems just and proper in the circumstances.

_____
One of the Attorneys for Board of Trustees
of William Rainey Harper College No. 512
and the Illinois Capital Development Board

Kenneth M. Florey
Scott A. Strange
ROBBINS, SCHWARTZ, NICHOLAS,
 LIFTON & TAYLOR, LTD.
20 N. Clark Street, Suite 900
Chicago, Illinois 60602
(312) 332-7760
I.D. No. 115190

ROBBINS SCHWARTZ NICHOLAS LIFTON & TAYLOR LTD.



20 North Clark Street

Suite 900

Chicago, IL  60602-4115

312.332.7760 tel

312.332.7768 fax

www.rsnlt.com

Kenneth M. Florey
kflorey@rsnlt.com

1110.61093

**VIA U.S. MAIL AND FACSIMILE**

**CONFIDENTIAL SETTLEMENT OFFER**
**FOR SETTLEMENT PURPOSES ONLY**

April 12, 2007

Ms. Ellen B. Epstein
Burke Burns & Pinelli, Ltd.
Three First National Plaza
70 W. Madison, Suite 4300
Chicago, Illinois 60602
(312) 541-8603 (fax)

Ms. Laurie Randolph
Donald A. O'Brien
Hinshaw & Culbertson, LLP
222 N. LaSalle St., Ste. 300
Chicago, IL 60601-1081
(312) 704-3001 (fax)

Re:     **Settlement Proposal and Notice of Destructive Remedial Work**

*Harper College, et al., v. Burnidge, Cassell and Associates, Inc., et al.*
**Cook County Circuit Court Case No. 06 L 5812**
**Judge Ronald F. Bartkowicz**

Dear Counsel:

In accordance with Ms. Epstein's request, we have compiled and itemized the actual and estimated costs of repairing and/or replacing the defectively designed and/or constructed portions of the work associated with Harper College's Wojcik Conference Center and Performing Arts Center Project (the "Project"). The following figures are for settlement purposes only, and shall not be admissible in this action, or in any other action or proceeding, for any purpose:



**EXHIBIT**

B

ROBBINS SCHWARTZ NICHOLAS LIFTON & TAYLOR LTD.

Attorneys Epstein, Randolph and O'Brien
*Harper College v. Burnidge, et al.*
April 12, 2007
Page 2

### Harper College's Performing Arts Center

| | | |
|---|---|---:|
| 1. | Replacement of Entryway Sidewalk | $3,000 |
| 2. | Correction of Overflow Roof Drains | $500 |
| 3. | Correction of Roof Leak Near West Side Lobby | $50,000 |
| 4. | Repair or Replacement of Blistered and Ridged Parapet Roof Membrane | $250,000 |
| 5. | Correction of Rusting and Paint Peeling on Canopy | $20,000 |
| 6. | Correction of Peeling and Discoloration of Coating on Fly Tower Wall | $201,968 |
| 7. | Correction of Disruptively Loud Chilled-Water Loop | $435,000 |
| 8. | Correction of Seating Height in Auditorium | $24,793 |
| 9. | Reconfiguration to Make Mechanical Room Accessible | $49,406 |

### Harper College's Wojcik Conference Center

| | | |
|---|---|---:|
| 10. | Repair and/or Replacement of Cracked Soffits on Exterior of Dining Room | $3,500 |
| 11. | Sealing of Bare Masonry on Third Floor Mechanical Space | $2,000 |
| 12. | Correction of Improperly Installed and Improperly Sloped Roof Above East Revolving Door Entrance | $2,500 |
| 13. | Correction of Standing Water on Dining Room Roof and Bent Coping Around Roof Perimeter | $225,000 |
| 14. | Correction of Rusting and Paint Peeling on Canopy | $20,000 |
| 15. | Replacement of Leaking Curtain Wall | $963,900 |

### Incidental Damages

| | | |
|---|---|---:|
| 16. | A/E Services to Determine Sources of Above-Referenced Problems | $29,727 |
| | **TOTAL** | $2,281,294 |

ROBBINS SCHWARTZ NICHOLAS LIFTON & TAYLOR LTD.



Attorneys Epstein, Randolph and O'Brien
*Harper College v. Burnidge, et al.*
April 12, 2007
Page 3

   We are authorized by Harper College and the Capital Development Board to extend the following settlement offer: upon Defendants' prompt payment to Plaintiffs in the amount of $2,281,294, and upon our receipt from both Defendants of pre-approved, full and unconditional releases of all claims, Plaintiffs shall dismiss this action with prejudice. Please indicate your acceptance or rejection of this settlement offer by April 27, 2007. If we do not receive your acceptance or rejection by that date, this offer is revoked.

   Please be advised that Harper College requested bids for the work identified in Item 15 of the above-list (Replacement of Leaking Curtain Wall), and received two contractors' bids on April 3, 2007. (A bid package for this work was tendered to Defendant Paschen Neilsen by Harper College's administration.) The dollar figure associated with Item 15 ($963,900) reflects the price of the low bid received. Harper College intends to award the contract for this work in the next few weeks. The work is expected to commence on May 21, 2007 and is expected to be substantially complete by August 27, 2007. Accordingly, we wish to expedite an agreement as to: (1) the allocation of responsibility for Item 15; and (2) the amount of damages associated with Item 15.

   Moreover, if either Defendant wishes to examine, test, and/or observe the demolition of the existing curtain wall identified in Item 15, and/or the construction and installation of the replacement work associated with Item 15, please contact me at your earliest convenience to make arrangements.

   Lastly, in response to Burnidge's interrogatories and document requests to Plaintiffs, and in light of our intention of mediating this action before continuing with further litigation, we will make all non-privileged Project documents in Plaintiffs' possession available to both Defendants for inspection and copying, upon reasonable notice. We suggest putting all other discovery requests on hold, pending the outcome of mediation.

   To facilitate an in-depth discussion of these issues, and to discuss the possibility of mediating this action, we propose a meeting between counsel for each party and representatives from each party with full settlement authority. We will call you by April 23, 2007 to discuss these issues. In the meantime, please feel free to call me with any questions.

Very truly yours,

ROBBINS, SCHWARTZ, NICHOLAS,
   LIFTON & TAYLOR, LTD.

Kenneth M. Florey
cc:    Robert A. Getz, Harper College
       Fred Hahn, Illinois Capital Development Board
G:\KMF\HARPER\Harper v. Burnidge\Correspondence\Ltr re itemized settlement offer to defendants 041207.wpd

# BURKE BURNS & PINELLI, LTD.

ATTORNEYS AT LAW
SUITE 4300
THREE FIRST NATIONAL PLAZA
CHICAGO, ILLINOIS 60602-4229

EDWARD J. BURKE
MARY PATRICIA BURNS
VINCENT D. PINELLI
MARY ANN MURRAY
STEPHEN F. WELCOME
ELLEN B. EPSTEIN
DONALD F. HARMON
AMANDA RIPP
ADRIANA R. GABRIEL
BLANCA R. DOMINGUEZ

TELEPHONE
(312) 541-8600

FACSIMILE
(312) 541-8603

May 9, 2007

**VIA OVERNIGHT MAIL**

Tuschall Engineering Company, Inc.
15W700 79th Street
Burr Ridge, Illinois 60521-5966

Attn: Mr. James Tuschall

       Re:    **Performing Arts Center & Industrial Conference Center**
             **William Rainey Harper College**
             **CDB Project No. 810-032-016**

             **Board of Trustees of Harper College v. Burnidge, Cassell and Associates**
             **and F.H. Paschen, S.N Nielsen, Inc.**
             **Case No. 06 L 005812**

Dear Mr. Tuschall:

      I am one of the attorneys for F.H. Paschen, S.N. Nielsen, Inc. ("Paschen"). In the summer of 2006 the Board of Trustees of Harper College ("Harper") filed suit against Burnidge, Cassell and Associates ("Burnidge") and Paschen. See copy of Complaint enclosed herewith. In the Complaint Harper alleged that both Paschen and Burnidge breached their respective contracts due to alleged "defects" as listed in Paragraph 29 (Count I-Burnidge) and Paragraph 35 (Count II-Paschen). Except for the allegations contained in Paragraph 29 against Burnidge regarding design defects, the alleged claims are the same as against both Paschen and Burnidge. No further detail was, or has been, provided regarding the nature or scope of the alleged "defects". Harper claimed damages in an unspecified amount.

      To date, Harper has not made any specific assignment of alleged fault nor any request for remediation. Lastly, until mid-April 2007, Harper had not provided any "cost" in relation to any claimed remediation.



EXHIBIT

C

*BURKE BURNS & PINELLI, LTD.*

Tuschall Engineering
May 9, 2007
Page 2

In mid-April 2007, after repeated requests for greater detail regarding the scope of the claims and the alleged costs of any potential remediation (commencing in the summer of 2006), Harper, through its counsel and for the first time, provided the enclosed correspondence listing 15 claimed remediation items along with an alleged lump sum cost to repair or replace. See attached April 12, 2007 Letter.

No other information has been provided by Harper. Thus, at this time, the exact nature, cause and extent of the fifteen claimed items, as well as the need for, and scope of, any remediation, remains unknown.

Please further note that Harper indicates its desire to "Replace the Leaking Curtain Wall" by "May 21, 2007" and that such "work" has been bid. See April 12, 2007 Letter. Even though said "work" has been defined in scope in the bid, we have been notified that certain undefined "water testing" will be performed on the "curtain wall" on May 23rd and May 24th, 2007. If you wish to have someone from Tuschall in attendance please advise.

Accordingly, please notify your insurance carrier that a potential liability exists. In addition, please be advised that examination and testing of the "curtain wall" along with observation of the demolition and re-construction of the "curtain wall" is being made available at this time.

Please also find enclosed copies of two letters from Wiss, Janey, Elstner Associates, Inc. dated December 13, 2004 and June 12, 2006. The June 12th letter was received by Paschen for the first time on April 25, 2007.

If you have any questions regarding the above, please feel free to contact Jim Blair at F.H. Paschen, (773)444-3474.

Very truly yours,
BURKE BURNS & PINELLI, LTD.

Ellen B. Epstein

EBE/ap
cc: F.H. Paschen, S.N. Nielsen, Inc.

**UPS Next Day Air**
**UPS Worldwide Express**

S h i p p i n g   D o c u m e n t

See instructions on back. Visit UPS.com® or call 1-800-PICK-UPS® (800-742-5877) for additional information and UPS Tariff/Terms and Conditions.

**TRACKING NUMBER** 1Z FA5 390 22 1005 4366

**① SHIPMENT FROM**

SHIPPER'S UPS ACCOUNT NO. **FA5390**

REFERENCE NUMBER
24036

NAME
Ellen B. Epstein

TELEPHONE
312-541-8600

COMPANY
BURKE BURNS & PINELLI LTD

STREET ADDRESS
3 FIRST NATIONAL PLZ RM STE#4300

CITY AND STATE
CHICAGO

ZIP CODE
IL  60602-5010

**② EXTREMELY URGENT DELIVERY TO**

NAME
Mr. James Tuschall

TELEPHONE

COMPANY
Tuschall Engineering Company, Inc.

STREET ADDRESS
15W700 79th Street

DEPT./FLR.

Residential Delivery

CITY AND STATE (INCLUDE COUNTRY IF INTERNATIONAL)
Burr Ridge

ZIP CODE
IL  60521-5966

**③ WEIGHT** — Enter "LTR" if Letter

**DIMENSIONAL WEIGHT** (If Applicable)

**LARGE PACKAGE**

**④ SHIPPER RELEASE**

**CHARGES**

**⑤ TYPE OF SERVICE**

[X] NEXT DAY AIR

[ ] EXPRESS (INT'L)

FOR WORLDWIDE EXPRESS SHIPMENTS
Mark an "I" in this box if shipment only contains documents of no commercial value.

[ ] DOCUMENTS ONLY

**⑥**

[ ] SATURDAY PICKUP  See instructions.

[ ] SATURDAY DELIVERY  See instructions.

**OPTIONAL SERVICES**

[ ] DECLARED VALUE FOR CARRIAGE  AMOUNT

[ ] C.O.D.  AMOUNT

**⑦ ADDITIONAL HANDLING CHARGE**

[ ] An Additional Handling Charge applies for certain items. See instructions.

**TOTAL CHARGES**

**⑧ METHOD OF PAYMENT**

[ ] BILL SHIPPER'S ACCOUNT NUMBER

[ ] BILL RECEIVER

[ ] BILL THIRD PARTY

[ ] CREDIT CARD — American Express / Diner's Club / MasterCard / Visa

[ ] CHECK

**⑨** RECEIVER'S/THIRD PARTY'S UPS ACCT. NO. OR MAJOR CREDIT CARD NO.

EXPIRATION DATE

THIRD PARTY'S COMPANY NAME

STREET ADDRESS

CITY AND STATE

ZIP CODE

**⑩** SHIPPER'S SIGNATURE X Burke Burns & Pinelli, Ltd.

All shipments are subject to the terms contained in the UPS Tariff/Terms and Conditions of Service, which are available at ups.com and local UPS offices.

DATE OF SHIPMENT
5/09/07

0101911202609 1/07 S

SHIPPER'S COPY

ROBBINS SCHWARTZ
NICHOLAS LIFTON & TAYLOR, LTD.

Attorneys at Law

CHICAGO ▪ DECATUR ▪ COLLINSVILLE ▪ JOLIET

20 North Clark Street
Suite 900
Chicago, IL 60602-4115
P: (312) 332-7760
F: (312) 332-7768
www.rsnlt.com

Samuel B. Cavnar
scavnar@rsnlt.com
1110.61093

**VIA HAND DELIVERY**

August 24, 2007

Honorable Judge Ronald F. Bartkowicz
Richard J. Daley Center
Courtroom 2101
Chicago, IL 60602

    Re:   *Harper College, et al., v. Burnidge, Cassell, et al.*
          Cook County Circuit Court Case No. 06 L 5812
          Hon. Judge Ronald F. Bartkowicz

Dear Judge Bartkowicz:

    Pursuant to the Order you entered on July 11, 2007, please allow the following to serve as Plaintiffs' summary of their claims against Defendants Burnidge and Paschen in the above-referenced matter. Plaintiffs respectfully reserve their right to amend and/or supplement the following items, as additional information is obtained.

### Performing Arts Center

1. Replacement of entryway sidewalk – $3,000: Certain sidewalk panels cracked, spalled, and began to deteriorate as a result of improper design and/or construction. These panels did not have proper control joints.

2. Correction of overflow roof drains – $500: Lack of weep-holes along base of overflow drains created water pooling around their perimeters.

3. Correction of roof leak near west-side lobby – $50,000: A leak occurred in the west-side lobby near the women's restroom. This portion of the wall system lacks an adequate moisture barrier, which may allow for water to migrate along masonry ties and infiltrate the interior of the building.

4. Repair or replacement of blistered and ridged parapet roof membrane – $250,000: The roof membrane is not properly adhered, and exhibits blisters and ridges.

5. Correction of rusting and paint peeling on canopy – $20,000: Paint peeled; rust developed. Surface preparation and re-coating is necessary.



EXHIBIT

D

ROBBINS SCHWARTZ
NICHOLAS LIFTON & TAYLOR, LTD.
Attorneys at Law
CHICAGO ▪ DECATUR ▪ COLLINSVILLE ▪ JOLIET

Honorable Judge Ronald F. Bartkowicz
August 24, 2007
Page 2

6.      Correction of peeling and discoloration of coating on fly tower wall –
        $201,968: The coating on the fly-tower wall exhibits discoloration and, as a
        result of an adhesion failure, has flaked off the wall.

7.      Correction of disruptively loud chilled-water loop – $435,000: When the chiller
        nearest to the theater engages during a performance, its sound drowns out
        the performance. Attempts to soundproof the area around the chiller have
        been unsuccessful.

8.      Correction of seating height in auditorium – $24,793: One row of seating in
        the auditorium was installed at the same height as the row directly in front of
        it, completely obscuring the view from the back row.

9.      Reconfiguration to make mechanical room accessible – $49,406: The design
        and/or construction of the entryway to this mechanical room conflicts with the
        mechanical components directly inside the entryway to the room, making
        access difficult, especially with tools or equipment.

### Wojcik Conference Center

10.     Repair and/or replacement of cracked soffits on exterior of dining room – $3,500:
        Exterior gypsum soffits did not contain appropriate number of control joints,
        leading to cracking in the gypsum.

11.     Sealing of bare masonry on third floor mechanical space – $2,000: Exterior
        masonry is not coated with block sealer as provided in specifications.

12.     Correction of improperly installed and improperly sloped roof above east
        revolving door entrance – $2,500: Roof above door entrance was not properly
        sloped, and had no scupper.

13.     Correction of standing water on dining room roof and bent coping around roof
        perimeter – $225,000: The perimeter coping detail is poor; the slope of the roof
        must be further examined and corrected.

14.     Correction of rusting and paint peeling on canopy – $20,000: Paint peeled; rust
        developed. Surface preparation and re-coating is necessary.

15.     Replacement of leaking curtain wall – $963,900: Remediation project currently
        underway to replace defective metal panel system on west, north, and east
        facades of building. All parties have inspected existing conditions and had an
        opportunity to test the defective components, a selected number of which have
        been removed and stored for use in this action.

ROBBINS SCHWARTZ
NICHOLAS LIFTON & TAYLOR, LTD.
Attorneys at Law
CHICAGO • DECATUR • COLLINSVILLE • JOLIET

Honorable Judge Ronald F. Bartkowicz
August 24, 2007
Page 3

### Incidental Damages

16.    Architectural and engineering consultant services needed to determine sources of above-referenced problems – $29,727.

We look forward to discussing these matters with you and with all interested parties at the next status hearing on Tuesday, August 28, 2007, at 8:15 a.m.

Sincerely,

ROBBINS, SCHWARTZ, NICHOLAS,
LIFTON & TAYLOR, LTD.

By: Samuel B. Cavnar

cc:    Laurie Randolph (via fax to (312) 704-3001)
       Donald O'Brien (via fax to (312) 704-3001)
       Ellen Epstein (via fax to (312) 541-8603)
       Kenneth M. Lubinski (via fax to (312) 750-1211)

G:\KMF\HARPER\Harper v. Burnidge\Correspondence\Ltr to Judge Bartkowicz re Order entered 071107.wpd

# BURKE BURNS & PINELLI, LTD.

### ATTORNEYS AT LAW
### SUITE 4300
### THREE FIRST NATIONAL PLAZA
### CHICAGO, ILLINOIS 60602-4229

EDWARD J. BURKE
MARY PATRICIA BURNS
VINCENT D. PINELLI
MARY ANN MURRAY
STEPHEN F. WELCOME
ELLEN B. EPSTEIN
DONALD F. HARMON
AMANDA RIPP
ADRIANA R. GABRIEL
BLANCA R. DOMINGUEZ
CHRISTOPHER J. HALES

TELEPHONE
(312) 541-8600

FACSIMILE
(312) 541-8603

September 12, 2007

**VIA OVERNIGHT MAIL**

Tuschall Engineering Co., Inc.
15 W700 79th Street
Burr Ridge, Illinois 60521
c/o Attorney of Record
Bradford D. Roth
Cassiday Schade LLP
20 North Wacker Drive
Suite 1040
Chicago, Illinois 60606

Insurance Resource Consultants
60 Revere Drive
Suite 360
Northbrook, Illinois 60062

Re:    **Board of Trustees of Harper College, et al v. Burnidge Cassell et al.
Case No. 06 L 005812 (Circuit Court of Cook County, Illinois)**

**William Rainey Harper College
Performing Arts and Conference Centers
CDB Project No. 810-032-016, CDB Contract No. 50-0735-81**

To:    Tuschall Engineering Co., Inc. and Insurance Resource Consultants:

I am one of the attorneys for F.H. Paschen, S.N. Nielsen, Inc. ("Paschen"), a named party Defendant and Third Party Plaintiff in the above-captioned litigation (the "Litigation"). Third-Party Defendant Tuschall Engineering Co., Inc. ("Tuschall") was one of Paschen's subcontractors in relation to the above captioned Harper College project (the "Project"). Plaintiffs in the Litigation claim multiple alleged defects in the construction (and design) as alleged in the Complaint and in two letters tendered by counsel for Plaintiffs dated April 12 and August 24, 2007. I have enclosed another copy of the Complaint and the April 12th Letter (sent under cover of Paschen's May 9th Letter) and also enclose a copy of the August 24th letter.

This is in follow-up to Paschen's written notice and tender of May 9, 2007. As explained in that letter the claims by Plaintiffs in the Litigation arise out of, in whole or in part, the Project work and activities performed by Tuschall. In addition, Paschen was named as an additional insured under certain insurance policies provided by Tuschall, including, without limitation, policies issued by Western States Insurance Co. and Acuity/Heritage.



**EXHIBIT**

E

*BURKE BURNS & PINELLI, LTD.*

September 12, 2007
Page Two

Tuschall, without ambiguity, agreed in its subcontract to indemnify and hold Paschen harmless from any and all claims made against Paschen arising from the work provided by Tuschall to the Project. Also, Paschen, without question, enjoys additional named insured status under the language of Tuschall's insurance policies which further contain coverage insuring Tuschall's indemnity obligations. Under Illinois law Tuschall's policies are primary and owe both a defense and indemnity for loss to Paschen. Tuschall has no basis to impose upon Paschen and its insurers the expense involved in defending the claims made by Plaintiffs in this Litigation.

Accordingly, pursuant to the terms of that certain Subcontract Agreement and the insurance policies tendered thereunder, Paschen hereby tenders its defense in relation to all matters arising out of the above captioned Litigation to Tuschall to protect and save harmless Paschen from any loss, judgment, cost or expense, including legal fees, connected with the Litigation and thus, hereby demands that Tuschall defend and protect all of Paschen's interest in this Litigation, to appoint qualified counsel to represent Paschen, to pay all costs and expenses incurred as a result of such representation and to pay any judgment entered against Paschen, if any, including, without limitation, any interest costs or expenses.

Please have an authorized representative of Tuschall accept this tender by sending, within five days hereof, via e-mail or facsimile, the Acknowledgment provided herein reflecting Tuschall's acceptance of this tender. In addition, please provide the name, address and telephone number of the attorney who will be handling this matter on behalf of Paschen in the future. Should you fail or refuse to accept further handling of Plaintiffs claims on behalf of Paschen, you are hereby placed on notice that Paschen may exercise its right of indemnifications against Tuschall in a separate indemnity action.

Paschen otherwise reserves all of its rights, remedies and causes of action that it may have against Tuschall and its liability insurers with respect to any damage suffered by Paschen as a result of any past and/or present action on the part of Tuschall or its insured with respect to the Litigation. Further this tender does not waive Paschen's right, in its sole discretion, to retain other counsel to represent its interests in this Litigation at any time hereafter or to thereafter seek reimbursement for all resultant loss, costs, fees and expenses under the terms of the Subcontract Agreement, the policies and Illinois law.

Please contact me if you have any questions regarding the foregoing.

Very truly yours,
BURKE BURNS & PINELLI, LTD.

Ellen B. Epstein

EBE/ap
cc: F.H. Paschen, S.N. Nielsen, Inc.

*Burke Burns & Pinelli, Ltd.*

September 12, 2007
Page Three

## ACCEPTANCE AND ACKNOWLEDGMENT

I, _____, _____, on behalf of **TUSCHALL ENGINEERING CO., INC.** hereby accepts Paschen's tender of the defense as requested herein and agree to defend and protect all of Paschen's interest in this Litigation, to appoint a qualified attorney to represent Paschen, to pay all fees, costs and expenses incurred as a result of such representation, and to pay any judgment entered against Paschen, if any, including, without limitation, any interest, costs and expenses charged thereon.

**TUSCHALL ENGINEERING CO., INC.**

By:_____

Its:_____

Dated:_____